### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| THE CAPE FC, LLC, an Indiana limited liability company, | ) ) ) ) | **CASE NO. 2:26-cv-01049** |
| Plaintiff, | ) ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| BAKER BARRIOS ARCHITECTS, INC., a Florida corporation, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, The Cape FC, LLC ("Plaintiff" or "Owner"), hereby sues Defendant, Baker Barrios Architects, Inc. ("Defendant" or "BBA"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), *et. seq.,* because the amount in controversary exceeds the sum of $75,000, exclusive of interest and costs, and it is between citizens of different States.

2. Plaintiff is a limited liability company organized and existing under the laws of the State of Indiana, with its principal place of business in Indianapolis, Indiana, and therefore, a citizen of Indiana for purposes of diversity.

3. Plaintiff's sole member is The Cape FC II, LLC, an Indiana limited liability company with its principal place of business in Indianapolis, Indiana, and therefore, a citizen of Indiana for purposes of diversity.

4. The Cape FC II, LLC's sole member is The Cape FC Owners, LLC, an Indiana limited liability company with its principal place of business in Indianapolis, Indiana, and therefore, a citizen of Indiana for purposes of diversity.

5.     The Cape FC Owners, LLC's sole member is Flaherty Capital Investors II, LLC, an Indiana limited liability company with its principal place of business in Indianapolis, Indiana, and therefore, a citizen of Indiana for purposes of diversity.

6.     Flaherty Capital Investors II, LLC's members are The Cape FC Owners, LLC (identified above); The Cape FC II, LLC (identified above); and the Cape FC, LLC (Plaintiff); as well as the following persons, each of which reside in Indiana, and therefore, are citizens of Indiana for purposes of diversity:

(a)     Brian Prince, residing in Noblesville, Indiana 46062.

(b)     P. Christopher Kirles, residing in Indianapolis, Indiana 46260.

(c)     Michael Collins, residing in Cicero, Indiana 46034

(d)     Derek Hammond, residing in Westfield, Indiana 46062

(e)     Brandon Bogan, residing in Noblesville, Indiana 46062.

7.     Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Florida, and therefore, is a citizen of Florida for purposes of diversity.

8.     Venue is proper in the Middle District of Florida, because, among other things (i) Plaintiff's action has accrued in Lee County, which is part of the Middle District of Florida, and substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida; (ii) the construction project at issue in this case is located in Lee County, Florida; and (iii) for other grounds set forth in 28 U.S. Code § 1391.

9.     The Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business in Florida, Defendant is incorporated in Florida, and has at least

three (3) main offices in Florida. Moreover, Defendant subjected itself to personal jurisdiction in Florida by agreeing to perform professional services for a construction project located in Florida.

10.     All conditions precedent to the prosecution of this action have been performed, satisfied, excused, and/or waived.

11.     Plaintiff has retained the undersigned to prosecute this action and has agreed to pay attorneys' fees based upon an hourly rate.

**GENERAL ALLEGATIONS**

**A.     BBA's delayed and defective preconstruction design development**

12.     Owner is the owner/developer of a luxury mixed-use multi-family commercial development, with residential units and commercial retail spaces, known as "The Cove", located at or about 849 Cape Coral Parkway East, Cape Coral, Florida 33904 (the "Project").

13.      On or about May 26, 2021, and as amended on September 7, 2022, Owner entered into a contract with BBA (collectively, the "Contract"), whereby BBA agreed to serve as the Project's Architect-of-Record, including design, procurement, and coordination of all Project construction drawings and specifications, and continuing contract administration, review, and approval obligations through Project completion. A true and accurate copy of the Contract is attached as **Exhibit A.**

14.     The Project utilized a design-bid-build delivery method in which BBA issued its design documents and submittals for the Owner to utilize in the preparation of its construction budget, and as part of its requests for proposals to subcontractors through the Project's construction manager, DeAngelis Diamond Construction, LLC ("DD").

15.     Owner selected BBA as the Project's Architect-of-Record, in part, due to BBA's familiarity with projects of the applicable caliber, presence in Florida (with offices in Tampa,

3

Orlando, and Miami), representation that it could meet the Project's schedule, and knowledge of the local design/permitting requirements specifically required in Lee County, Cape Coral, Florida.

16.     Pursuant to the Contract at B101, Article 3.1.3, BBA was required to perform its services pursuant to the Design Schedule and its failure to do so constitutes a material breach of the Contract:

§ 3.1.3 The schedule for the performance of the Architect's services (the "Design Schedule") is attached to and made a part of this Agreement as Exhibit B. Upon the Architect's written notice to the Owner by Architect of the need for an extension to the Design Schedule or any interim Milestone date contained therein, and upon the Owner's approval of such request for extension, the Architect shall provide a recovery schedule indicating how the Architect intends to perform so that the date for issuance of the final Construction Documents will not be impacted. Failure of the Architect to perform in accordance with the Design Schedule or to meet any of the interim Milestone dates set forth therein shall be a material breach of this Agreement; provided such failure is solely the negligent fault of the Architect. To the extent that the Project s Schedule has been agreed to between the Contractor and Owner as of the date of execution of this Agreement, the Architect represents that such Project Schedule has been provided to it and that the Design Schedule is consistent with the Project Schedule.

17.     Pursuant to the Design Schedule, BBA was required to meet the following deadlines (among others):

| Set/Milestone | Deadline |
|---|---|
| Schematic Design | August 31,2021 |
| 50% CD Package | October 12, 2021 |
| 95% CD Package (issued as an 80% set by BBA in breach of the 95% CD Package requirement) | November 23, 2021 |
| Permit Set | N/A |
| Bid / Permit Set | December 14, 2021 |
| Construction Issue Set | December 15, 2021 |

18.     One of the most important deliverables was the Bid / Permit Set (the "Bid Set") because it was to be relied upon by DD and the Project's subcontractors to complete and issue to Owner their Guaranteed Maximum Price Proposal ("GMP Proposal") and related bid proposals for the Project.

19.     December 2021 – the agreed-upon deadline for the Bid Set in the Design Schedule – was the optimal time from a Project financing perspective to "lock in" a Guaranteed Maximum

Price, and issue requests for proposals to contractors for the various scopes of work for construction, as it was well-known that construction costs would balloon in the early part of 2022.

20.     Owner was originally presented a GMP Proposal of $54 million from DD based upon the expectation that the Bid Set would be timely delivered pursuant to the Design Schedule and the Contract, and subcontractors would therefore be submitting bids prior to early 2022.

21.     BBA, however, did not provide the Bid Set until January 29, 2022 – six (6) weeks after the deadline set forth in the Design Schedule.

22.     Additionally, the late Bid Set submitted by BBA on January 29, 2022, contained several errors and omissions, was below the applicable standard of care, was inadequate, and incomplete, among other things.

23.     BBA's defective Bid Set caused many subcontractors to refuse to submit bids for the Project and/or include a significant contingency "cushion" in their bids to account for the missing information in the Bid Set.

24.     The late and defective delivery of BBA's Bid Set also caused Owner to miss the intended optimal time to bid the Project.

25.     As had been anticipated in the industry, Southwest Florida experienced a significant increase in bidding opportunities in early 2022, resulting in extreme escalation in pricing due to the demand for bids outweighing the supply of capable contractors. Owner would not have suffered this increase in costs but for the late and defective delivery of BBA's Bid Set.

26.     As a direct result of BBA's late and defective Bid Set, the new GMP Proposal for the Project was $70,000,000; an increase of approximately $15 million from the original GMP Proposal.

27.     Owner and other Project participants notified BBA of its late and defective Bid Set.

28.     In response, BBA acknowledged its performance issues on the Project and replaced its Project team to, among other things, correct design deficiencies and service and communication issues with the Bid Set.

29.     During the next four (4) months, from about February 2022 to mid-June 2022, BBA's new Project team worked through the severe errors and omissions in its Bid Set, to develop adequate Construction Drawings ("CDs").

30.     Finally, on June 15, 2022 -- over six (6) months after the agreed deadline in the Design Schedule -- BBA officially issued the final CDs for the Project (the "Final GMP Set").

31.     Based upon the Final GMP Set, DD provided a final GMP Proposal for the Project in August 2022, in the amount of approximately $75,400,000 – a $20+ million increase from the original GMP Proposal.

32.     The increased costs from original GMP Proposal of $54 million, to the final GMP Proposal of $75,400,000, based on which the Project was constructed, was the direct result of BBA's failure to comply with the Design Schedule and/or providing a not just late, but defective Bid Set, causing Owner to suffer damages as a direct and proximate result of BBA's delay, errors, and/or omissions.

**B.      BBA's errors and omissions identified during Project construction led to numerous requests for information, change orders, and further increased costs for which BBA is responsible**

33.     Once Project construction began, Owner and other Project participants, including the Project's subcontractors, identified further errors and omissions in the Final GMP Set. This was, upon information and belief, a result of BBA's failure to coordinate its design with Owner, Owner's representatives, other trades, subconsultants, code regulations, and local governmental authorities as required by the Contract and the applicable standard of care.

34.     Owner has identified at least 36 change orders that resulted from BBA's errors and/or omissions, which increased the Project costs by at least $1 million.

35.     For example, BBA designed the Project's flood panels 12" short of the height required by the applicable local ordinance. This resulted in multiple change orders and damages to Owner in the amount of at least $135,710.43. This is only one example of the increased costs and damages caused in the form of change orders resulting from BBA's errors, omissions and overall defective work.

**C.      BBA's errors and omissions delayed Project completion, causing damage to Owner**

36.     The Project's original substantial completion date for all phases was October 2024.

37.     As a direct and proximate result of BBA's errors, omissions and overall failure to provide timely, accurate and complete work, the Project did not reach substantial completion until January 30, 2025.

38.     As a direct and proximate result of BBA's errors, omissions and overall failure to provide timely, accurate and complete work -- including, but not limited to, BBA's failure to design the Project's flood panels in accordance with applicable code requirements -- the Project did not obtain a final certificate of occupancy until February 25, 2026.

39.     As a further direct and proximate result of BBA's errors, omissions and overall failure to provide timely, accurate and complete work, the Project did not obtain a certificate of final completion until March 3, 2026.

40.     The delay in Project completion directly and proximately caused additional damages to Owner in the form of lost rent, rent concessions, and extra interest expense on Owner's Project financing, among other things, in the amount of at least $1 million.

7

## COUNT I
## <u>BREACH OF CONTRACT</u>

Plaintiff sues Defendant for breach of contract, repeats and realleges paragraphs 1 through 40 as if restated more fully herein, and further states:

41.    The Contract constitutes a valid and enforceable contract between the parties.

42.    BBA breached the Contract, as detailed herein, including, but not limited to, the following ways:

(a)    Failing to perform in accordance with the Design Schedule and/or the other requirements set forth in Section 3.1.3 to modify the Design Schedule (Contract, B101, Articles 2.2 and 3.1.3);

(b)    Failing to coordinate its design with Owner, Owner's representative, other trades, subconsultants, and governmental authorities to ensure its design was constructable, and in accordance with all applicable codes, laws, and regulations (Contract at B101, Articles 3.1.2 and 3.1.5);

(c)    Failing to comply with Owner-affiliate's "Flaherty & Collins Properties Design Standards" ( Contract at B101, Article 2.2.1);

(d)    Failing to "perform [BBA's] services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances" (Contract at B101, Article 2.2);

(e)    Failing to properly administer the Contract between Owner and DD (Contract at B101, Article 3.6.1); and

(f)　　Upon and information belief, failing to provide Owner a certificate of insurance and/or obtain sufficient commercial and/or professional liability insurance required by the Contract (Contract at B101, Article 2.5.1; 2.5.6; and 2.5.8).

43.　BBA agreed that its failure to comply with the Design Schedule and other provisions set forth in Section 3.1.3 is a material breach of the Contract. (Contract, B101, Article 3.1.3)

44.　As a direct and proximate result of BBA's breaches of the Contract, Owner has been and continues to be damaged.

WHEREFORE, Plaintiff respectfully requests entry of Final Judgment in its favor and against Defendant with an award in favor of Plaintiff in an amount to be proven at trial with prejudgment and post judgment interest, reasonable attorneys' fees and costs, and such further relief as this Court deems necessary and proper.

## COUNT 2
## PROFESSIONAL NEGLIGENCE

Plaintiff sues Defendant for professional negligence, repeats and realleges paragraphs 1 through 40 as if restated more fully herein, and further states:

45.　BBA owed a duty to Plaintiff to provide professional design services regarding all elements of the Project's design and construction consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances.

46.　BBA breached its duty to Plaintiff for the reasons set forth herein, including but not limited to, by providing delayed and defective drawings and specifications to the Project.

47.　As a direct and proximate result of BBA's breach, Plaintiff has suffered and continues to suffer damages.

9

WHEREFORE, Plaintiff respectfully requests entry of Final Judgment in its favor and against Defendant with an award in favor of Plaintiff in an amount to be proven at trial, together with prejudgment and post judgment interest, reasonable attorneys' fees and costs, and such further relief as this Court deems necessary and proper.

Dated:  April 6, 2026

Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Boulevard, Suite 2100
Fort Lauderdale, Florida 33301
Telephone: (954) 462-9500
Primary e-mail:    ckoff@stearnsweaver.com
                          cbarnett@stearnsweaver.com
Secondary e-mail: mhernandez@stearnsweaver.com


By:  */s/Chelsea Koff*
       CHELSEA E. KOFF
       Florida Bar No.: 0100557
       CRAIG S. BARNETT
       Florida Bar No. 35548

*Attorneys for Plaintiff*

#14623851 v2